**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MARK ROBISON,                    )
                                 )
            Plaintiff,           )
                                 )
      v.                         )          Civil Action No. 06-141 Erie
                                 )
JO ANNE B. BARNHART,             )
Commissioner of Social Security, )
                                 )
            Defendant.           )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

Plaintiff, Mark Robison, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.* Robison filed applications for DIB and SSI on March 29, 2005, alleging disability since September 5, 2004, due to acute back pain, panic attacks, severe depression and alcoholism (Administrative Record, hereinafter "AR", 53-55; 64; 153-154). His applications were denied, and he requested a hearing before an administrative law judge ("ALJ") (AR 36-41; 156-160). A hearing was held before an administrative law judge ("ALJ") on April 12, 2006, and following this hearing, the ALJ found that Robison was not entitled to a period of disability, DIB or SSI under the Act (AR 17-26; 165-186). His request for review by the Appeals Council was denied (AR 8-12), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will deny Plaintiff's motion and grant Defendant's motion.

**I. BACKGROUND**

Robison was born on December 4, 1959, and was forty-six years old on the date of the ALJ's decision (AR 24; 53). He is a high school graduate and has completed one year of college (AR 69). He previously worked as a furniture assembler and welder (AR 65).

1

Robison was treated by John J. Kalata, D.O., for his complaints of low back pain and depression.  On March 24, 2005, Robison reported a history of being in a car accident years ago (AR 147).  He complained of low back pain and "horrible" mood swings (AR 147).  He claimed he had been sober for seven months but since he quit drinking he felt more pain (AR 147).  Dr. Kalata noted that his gait, speech and mentation were normal, but that he seemed down and depressed (AR 147).  He diagnosed Robison with chronic and acute low back pain and clinical depression (AR 147).  Dr. Kalata prescribed Wellbutrin XL and Dolobid, and completed an Employability Assessment form stating that Robison was temporarily disabled from September 4, 2004 through November 1, 2005 due primarily to acute and chronic lumbar pain and severe depression, and secondarily due to anxiety and alcoholism (AR 93; 147).

Robison telephoned Dr. Kalata's office on April 4, 2005 complaining of significant panic attacks claiming that the Wellbutrin was not helping (AR 146).  Dr. Kalata started him on Effexor and Ativan (AR 146).

On April 8, 2005, Robison had an x-ray taken of his lumbar and thoracic spine (AR 195).  His lumbar spine x-ray showed an old healed severe compression fracture of the L2 and mild degenerative changes at L1 and L3, and there was no evidence of acute bone injury or other abnormalities (AR 95).  His thoracic spine x-ray was normal (AR 95).

On May 3, 2005, Robison was psychologically evaluated by Samuel Trychin, Ph.D., at Stairways Behavioral Health (AR 101-110).  Dr. Trychin reported that Robison was friendly and cooperative throughout the evaluation (AR 101).  He appeared to be relaxed and in good humor, and demonstrated appropriate social perceptiveness (AR 101).  Robison reported sleep and appetite problems, difficulty concentrating, suicidal ideation and daily crying spells (AR 102).  He reported that he had applied for medication management and outpatient treatment at Stairways (AR 102).  Dr. Trychin noted that during the assessment, Robison showed an overall average ability to concentrate and persevere and showed an excellent ability to attend to details on several subtests (AR 102).

Dr. Trychin administered Robison several psychological tests.  On the Wonderlic

Personnel Test (WPT)[1] Robison obtained a raw score of 23, which showed he had above average problem solving skills and the potential for success in general clerical work or as a first line supervisor (AR 102; 104).  Dr. Trychin also administered the Wechsler Adult Intelligence Scale Third Edition (WAIS-III) (AR 104-105).[2]  Robison achieved a Verbal IQ of 84, a Performance IQ of 102, and a Full Scale IQ of 94, which Dr. Trychin found was within the average range, but with indications of a learning disability (AR 104-105).  Dr. Trychin reported that Robison performed at the 6th grade level in reading and spelling, and at the 8th grade level in arithmetic based upon his Wide Range Achievement Test-Revised (WRAT-R) scores (AR 110).[3]  Robison's SCL-90[4] checklist score was very high in terms of his perception of his psychological distress, and Dr. Trychin indicated that his pattern of high scores indicated that either he was attempting to appear to be extremely distressed or he actually perceived himself as being extremely distressed (AR 107).  Dr. Trychin found that Robison had the necessary intellectual ability to work, and that it would be beneficial for him to have some place to go and something to do on a "more or less" regular basis in terms of alleviating his reported depression (AR 108).

Robison underwent a psychiatric evaluation on May 5, 2005 performed by Helen K. John, M.D. at Stairways Behavioral Health Outpatient Clinic (AR 96-99).  He reported that he had been chronically depressed since his wife and child left him (AR 96).  He claimed he suffered from panic attacks, decreased appetite, poor sleep, suicidal ideations with no plan, low energy and poor concentration (AR 96).  He reportedly quit drinking approximately eight months before

---

[1]According to Robison's psychological evaluation, the WPT is a widely recognized test of general ability that is used extensively as a screening tool in the selection and placement of employees and for vocational guidance (AR 110).  The test measures an individual's ability to learn, adapt, solve problems and understand instructions (AR 110).

[2]The WAIS-III is an individually administered IQ test that yields Verbal, Performance and Full Scale Intelligence Quotients, as well as Index Scores based upon a number of subtests (AR 110).  In effect, the WAIS-III is a sampling of the individual's ability to successfully perform a variety of different types of cognitive tasks (AR 110).

[3]The WRAT-R is a basic academic screening tool (AR 110).

[4]The SCL-90 test is a psychological self-report symptom checklist yielding measures of overall and symptom domain-specific levels of distress (AR 110).

the evaluation (AR 97). On mental status examination, Dr. John noted that Robison was cooperative, alert, had good eye contact and some psychomotor retardation, but no unusual mannerisms (AR 98). His speech was spontaneous with normal rate and volume, but at times was slightly unproductive (AR 98). She found Robison's thought processes were organized but slow, his affect was blunted and his mood was depressed (AR 98). Robison had no delusions, hallucinations or self-destructive impulses, and he had no short or long term memory impairment (AR 98). Dr. John found he had the ability to develop some insight (AR 98). She diagnosed Robison with major depressive disorder and assigned him a Global Assessment of Functioning ("GAF") score of 45 (AR 98).[5] She increased his Effexor dosage, added Inderal for anxiety, Remoron for sleep and depression and referred him to therapy for his depression (AR 98-99).

In a report of contact dated May 17, 2005, Dr. Kalata reported that he had seen Robison on May 16, 2005 but had not tested his range of motion (AR 118). He described Robison's gait as stiff but not antalgic, and he did not have any problems moving around the office but was stiff getting off and on the examination table (AR 118). Dr. Kalata indicated that he did not specifically test Robison's motor power or sensation, but his motor power was grossly normal and he did not complain of any loss of sensation (AR 118). According to Dr. Kalata, Robison's main problem was psychological not musculoskeletal (AR 118).

Frank Bryan, M.D., a state agency reviewing physician, reviewed the medical evidence of record on May 24, 2005 and concluded that Robison could occasionally lift 50 pounds and frequently lift 25 pounds; stand and/or walk for about 6 hours in an 8 hour day; sit for about 6 hours in an 8 hour day; was unlimited in his push and/or pull ability; and had no postural, manipulative, visual, communicative or environmental limitations (AR 121-122). In support of his conclusion, Dr. Bryan noted that there was no evidence in the record that Robison was receiving intensive treatment for his back condition and he had not alleged that his back condition precluded work related activities (AR 124). Dr. Bryan also reviewed Robison's

---

[5]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Scores between 41 and 50 indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR 34 (4th ed. 2000).

diagnostic studies, and noted that his thoracic spine x-ray was completely normal and his lumbar spine x-ray showed an old, healed compression at L2 with mild degenerative changes in adjacent end plates at L1 and L3 (AR 124). He found that there was no evidence of acute bone injury, no other abnormalities were seen and there was no mention in the report that Robison's spinal canal was compromised secondary to the compression fracture (AR 124). He observed that Dr. Kalata stated that Robison's gait was stiff but not antalgic, he had no difficulty moving around the office, his motor power was grossly normal and he did not complain of any loss of sensation (AR 124). Consequently, Dr. Bryan concluded that Robison was capable of working at the medium exertional level (AR 121-122).

On June 1, 2005, Dalton Raymond, Ph.D., a state agency reviewing psychologist, completed a Psychiatric Review Technique Form and concluded that Robison had mild restrictions in his activities of daily living; moderate difficulties in maintaining social functioning, concentration, persistence and pace; and no repeated episodes of decompensation (AR 139). On that same date, Dr. Raymond also completed a Mental Residual Functional Capacity Assessment form and opined that Robison was not significantly limited in a number of work related activities, and was only moderately limited in his ability to understand, remember and carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior; respond appropriately to changes in the work setting; travel in unfamiliar places; and set realistic goals or make plans independently of others (AR 126-127). Dr. Dalton concluded that Robison was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment (AR 128).

Robison returned to Dr. Kalata on October 27, 2005 for follow up and reported that he was doing "okay" except that his depression had worsened (AR 146). His back pain reportedly remained the same, but he claimed that if he stood for a period of time or bent over he suffered increased pain and spasms (AR 146). On physical examination, Dr. Kalata found lumbar paraspinal pain and spasm with diminished range of motion and tenderness to palpation (AR 146). He added Flexeril to his medication regime and increased his Effexor dosage (AR 146).

Dr. Kalata encouraged him to seek psychiatric follow up (AR 146).

Dr. Kalata completed a second Employability Assessment form on October 27, 2005 and opined that Robison was temporarily disabled until June 2006 due to severe depression and chronic lumbar pain (AR 151).

An MRI of Robison's lumbar spine conducted on November 1, 2005 showed a moderate old compression deformity of L2; retropulsion of a portion of the superior endplate of L2 resulting in moderate impingement of the left anterior aspect of the thecal sac at the L1-2 level; a prominent right posterolateral osteophyte from the inferior endplate of L2 resulting in moderate narrowing of the right L2-3 foramen; no evidence of a bulging disc or focal disc protrusion; and mild posterior facet arthritis at the L3-4, L4-5 and L5-S1 levels (AR 148-149).

On December 8, 2005, Dr. Kalata reviewed Robison's MRI and noted that it showed some impingement on the thecal sac from one of the endplates in L2, a significant amount of osteophyte formation and spondyloarthropathy in various levels of the spine, but there were no disc problems (AR 145). He observed that there was a question of some nerve root impingement on the right, but Robison did not complain of right-sided leg problems and denied any bladder or bowel incontinence (AR 145). On physical examination, Dr. Kalata found a diminished range of motion in the upper lumbar spine on flexion and extension and some spasm, but no radicular symptoms (AR 145). He changed his medication to Mobic and Ultram (AR 145). Dr. Kalata reported that his depression was more or less stable on the Effexor with Remeron at night (AR 145). He assessed him with chronic lumbar pain and lumbar osteoarthritis (AR 145).

Finally, Robison returned to Dr. Kalata on December 30, 2005 complaining of significant low back pain after falling off a washing machine while putting plastic over windows (AR 145). He reportedly lost his balance and fell striking his right side (AR 145). He denied any bladder or bowel dysfunction (AR 145). On physical examination, Dr. Kalata reported that Robison had significant spasm and tenderness of the lumbar spine, diminished range of motion, difficulty with ambulation and required a cane (AR 145). Robison declined a referral to neurosurgery since he was afraid surgery might leave him paralyzed (AR 145).[6]

---

[6]In his Brief, Robison refers to a narrative report authored by Dr. Kalata dated May 24, 2006 which was not before the ALJ but submitted to the Appeals Council. *See Plaintiff's Brief*

Robison and Alina Kurlanich, a vocational expert, testified at the hearing held by the ALJ (AR 165-186).  Robison testified that he was terminated from his last position on September 5, 2004 due to excessive absenteeism and had collected unemployment for approximately six months thereafter (AR 170-171).  He further testified that on the same date he was terminated he stopped drinking and went to a rehabilitation program at the Erie City Mission (AR 170-171). Robison stated that he used a metal cane to walk most of the time which had been prescribed by Dr. Kalata, but had not brought it to the hearing due to the metal detectors (AR 172).  He saw Dr. Kalata approximately every four to six weeks and had his first appointment with a therapist later in the month (AR 173).  He claimed he suffered from depression and panic attacks, which occurred every day and lasted from a few minutes to 30 minutes (AR 174).  He testified that his panic attacks were triggered by babies and children, stemming from an "ugly" divorce (AR 174). He had never been hospitalized for a mental condition (AR 174).

Robison testified that his sleep was interrupted due to back pain, and he only slept about four hours per night and napped during the day (AR 174-175).  He indicated that medication made his pain tolerable, but "everything" aggravated his pain, including shaving (AR 175).  He also suffered from shooting pain down his legs (AR 175).  Robison testified that he was able to walk about one block, stand in line approximately 10 to 15 minutes before needing to sit down, sit for about 15 to 20 minutes, and lift 10 to 15 pounds from waist level but not from the floor (175-176).  He was able to care for his personal needs and perform some routine household chores, but required breaks before completing the task (AR 176-177).  He depended on others for help in cooking and cleaning, could not perform yard work or snow removal and no longer engaged in any hobbies (AR 176-178).  He attended Alcoholics Anonymous meetings three times per week but did not socialize with other members outside the meetings (AR 179-180).  Robison claimed he cried for no reason, was irritable most of the time and had difficulty leaving the house due to depression (AR 178-180).

The ALJ asked the vocational expert if work existed for an individual of Robison's age, education and past work experience, who was limited to light work that did not require operation

---

pp. 4-5.  We have not considered Robison's recitation of this evidence since it was not included in the Administrative Record filed with this Court.

of foot controls, climbing, balancing, kneeling, crawling, repeated bending at the waist of 90 degrees or exposure to a loud noise environment (AR 181). The ALJ further indicated that such individual would not be able to engage in more than simple repetitive tasks, in routine work settings with routine work processes, would not be able to engage in work that required more than incidental interaction with the public, that involved high-stress activities, or that required work involving high quotas or close attention to quality production standards (AR 181). The vocational expert testified that such an individual could perform light, semi-skilled work as a stock part inspector, hardware assembler or welding machine operator (AR 182). The vocational expert further testified that such an individual could perform light, unskilled jobs as an inspector/hand packer, garment sorter, or an electronic worker (AR 182). Finally, the expert opined that he could perform the sedentary jobs of an assembler of electronics, a surveillance system monitor, or as a document preparer, and that these jobs would allow for a sit/stand option (AR 183).

Following the hearing, the ALJ issued a written decision finding that Robison was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 17-26). His request for review by the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner. He subsequently filed this civil action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that

they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that Robison met the disability insured status requirements of the Act (AR 17). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

The ALJ resolved Robison's case at the fifth step. At step two, the ALJ determined that his osteoarthritis of the lumbar spine, depression and anxiety were severe impairments, but determined at step three that he did not meet a listing (AR 19-22). At step four, the ALJ determined that he could not return to his past work, but retained the residual functional capacity

to perform work at the sedentary exertional level with the following limitations: he was precluded from work involving the operation of foot controls; could not perform climbing, balancing, kneeling or crawling and no repeated bending to 90 degrees; he was limited to simple, repetitive, routine work with no more than incidental interaction with the public or high stress; and no exposure to loud noise environments (AR 22).  At the final step, the ALJ determined that Robison could perform the jobs cited by the vocational expert at the administrative hearing (AR 19).  Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Robison first argues that the ALJ erred in his evaluation of the medical evidence at the third stage of the sequential evaluation process by determining that his physical and mental impairments did not meet or medically equal the listed impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *See Plaintiff's Brief* p. 8.  This provision contains a list of various impairments that the Commissioner has determined prevent a person from performing any work. 20 C.F.R. §§ 404.1525, 416.925.  A claimant who meets or medically equals all of the criteria of an impairment listed in Appendix 1 is *per se* disabled and no further analysis is necessary. *Burnett v. Commissioner*, 220 F.3d 112, 119 (3rd Cir. 2000).  A claimant bears the burden of proving that her impairments meet or equal a listed impairment.  *See Adorno v. Shalala,* 40 F.3d 43, 46 (3rd Cir. 1994).

Here, the ALJ first focused on the listings pertinent to the musculoskeletal system, and while he did not specifically cite to Listing 1.04, the ALJ implicitly found that the evidence failed to satisfy the criteria of that Listing.[7]  Listing 1.04 requires:

> Disorders of the spine (e.g., herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root ... or the spinal cord.
>
> With:

---

[7]Parenthetically, we observe that Robison has not identified any particular musculoskeletal listing he claims he meets.

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine);

or

B. Spinal arachnoiditis ...

or

C. Lumbar spinal stenosis ... .

20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.04.

The ALJ found that while Robison's osteoarthritis of the lumbar spine was a severe impairment, it had not resulted in any muscle atrophy or neurological deficits and he retained the basic ability to ambulate effectively and use his upper extremities (AR 21).  The ALJ observed that Robison acknowledged that he was able to walk one block, perform household chores, care for his personal needs and grocery shop (AR 21-22).  Finally, the ALJ noted that his treating physician reported that his MRI showed no significant disc problems (AR 22).

Robison argues that the ALJ failed to recognize that his November 5, 2004 MRI report demonstrated "objective evidence of nerve impingement."  *Plaintiff's Brief* 8.  We disagree.  The ALJ's decision reflects that he specifically discussed the results of this MRI in connection with his review of Dr. Kalata's treatment notes (AR 21).  Moreover, to the extent that Robison contends that evidence of nerve root impingement satisfies the criteria for Listing 1.04, such contention is without merit.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original); *see also Williams v. Sullivan,* 970 F.2d 1178, 1186 (3rd Cir. 1992).

Therefore, even though Robison may have nerve impingement, the record is devoid of any evidence demonstrating that the remaining criteria of Listing 1.04 were met.  For example, there is no evidence that Robison suffered any motor loss accompanied by sensory or reflex loss,

or evidence of a positive straight-leg raising test.  Indeed, the record reflects the opposite.  In May 2005 Dr. Kalata reported that Robison's motor power was grossly normal and he did not complain of any loss of sensation (AR 118).  Moreover, although Dr. Kalata recognized that there was a "question" of some nerve root impingement based upon the November 2005 MRI results, he reported that Robison did not complain of right-sided leg problems, denied any bladder or bowel incontinence and had no radicular symptoms (AR 145).  It follows that the ALJ's findings that Robison did not meet the requirements of the Listing is supported by substantial evidence.

Robison's contention with respect to his alleged mental impairments fares no better.  Because Robison fails to direct us to any Listing in support of his argument, we shall look to the two Listings considered by the ALJ: Listing 12.04, Affective Disorders, and Listing 12.06, Anxiety Related Disorders.  Both of these Listings consist of paragraph A criteria (a set of medical findings), paragraph B criteria (a set of impairment-related functional limitations) and paragraph C criteria (a set of additional functional limitations).  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A).  The required level of severity for 12.04 affective disorders is met when "the requirements in both A and B are satisfied, or when the requirements in C are satisfied."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.  The required level of severity for 12.06 anxiety-related disorders is met when "the requirements in both A and B are satisfied, or when the requirements in A and C are satisfied."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06.

Here, the ALJ found that while Robison's diagnoses of depression and anxiety "may" satisfy the A criteria for each Listing, he failed to meet the B criteria (AR 22).[8]  The paragraph B

---

[8]The ALJ further found that Robison's mental impairments did not meet the C criteria of Listing 12.04 or Listing 12.06 (AR 22).  We agree.  Listing 12.04 requires:

> C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms of signs currently attenuated by medication or psychosocial support, and one of the following:

requirements of Listing 12.04 and 12.06 require at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence or pace; or

    4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(B), 12.06(B). The term "marked" means "more than moderate but less than extreme," and a "marked limitation" is one that seriously interferes with a claimant's ability to "function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.00C. The ALJ found that Robison's affective disorder and anxiety-related disorder did not meet part B because the evidence reflected only mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace, and there was no evidence of episodes of decompensation of an extended duration (AR 22).

    In support of his argument that the ALJ erred in finding that he failed to meet a Listing,

---

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1§ 12.04(C).
    Listing 12.06 requires a "complete inability to function independently outside the area of one's home." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06(C). Robison has not pointed to any evidence which demonstrates that he meets these criteria, nor does our independent review of the record reveal any such evidence.

Robison does not direct our attention to the medical evidence of record which would support his claim that he suffers marked limitations in the criteria listed in part B. Rather, he vaguely argues that the ALJ improperly evaluated the medical evidence relative to "his symptoms of mental impairment" *Plaintiff's Brief* p. 8. In any event, we find there is substantial evidence in the record that he does not meet all of the requirements of Listing 12.04 and 12.06.

As noted by the ALJ, Robison acknowledged he was able to care for his personal needs and perform some household chores although he required breaks before completing some tasks (AR 22; 176-177). With respect to his ability to maintain social functioning, the ALJ recognized that he had difficulty going out in public and did not socialize, but was able to visit with friends and attended AA meetings (AR 22; 83; 179-180). In addition, we note that Dr. Trychin reported that Robison was friendly and cooperative throughout his evaluation and demonstrated appropriate social perceptiveness (AR 101). Regarding Robison's concentration, persistence or pace abilities, Dr. Trychin opined that he had above average problem solving skills and the potential for success in general clerical work or as a first line supervisor (AR 102; 104). Indeed, Dr. Trychin concluded that it would be beneficial for Robison to work in order to alleviate his depression (AR 108). Moreover, as observed by the ALJ, there is no evidence of any episodes of decompensation of an extended duration, and no treating or examining physician found that his mental impairments met or equaled the Listings' criteria (AR 22).

Finally, we observe that Dr. Dalton, the state agency reviewing psychologist, opined that Robison was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his mental impairments (AR 128). Dr. Dalton reviewed the medical evidence of record and concluded that Robison's impairments did not meet or equal the severity requirements of Listings 12.04 or 12.06 because he exhibited mild to moderate (rather than marked or extreme) limitations in three of the functional areas required under Listing 12.04(B) and 12.06(B) (AR 139). State agency physicians are experts in the field of social security disability evaluations, *see Social Security Ruling (SSR)* 96-6p, whose opinions are

14

treated as expert opinion evidence. *See* 20 C.F.R. §§ 404.1527(f)(2)(I); 416.927(f)(2)(I).  We therefore find no error in the ALJ's conclusion that Robison failed to meet Listings 12.04 and 12.06 due to his mental impairments.

Robison's final argument is that his testimony "clearly" establishes that he is unable to perform sedentary and/or light work since he is unable to sit, stand or walk for any length of time. *See Plaintiff's Brief* p. 9.  In essence, Robison challenges the ALJ's credibility determination.  In this regard, it is well settled that the ALJ, as the finder of fact, can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *See Baerga v. Richardson*, 500 F.2d

Here, the ALJ recognized that while Robison claimed he was totally precluded from work-related activities, his objective MRI studies revealed no significant disc problems (AR 23). The ALJ further noted that while Robison claimed he needed a cane to ambulate, he did not require the use of a cane at the hearing (AR 23).  Robison acknowledged that his medications helped relieve his back pain, he admitted he was able to lift 10 to 15 pounds, and the ALJ observed that despite his complaints of back pain, he was able to care for his personal needs and perform some household chores (AR 23).

We find that substantial evidence supports the ALJ's determination that Robison's claimed functional limitations were not supported by the medical evidence or the record as a whole.  The objective findings (without repeating such findings here) do not support Robison's claimed functional restrictions.  As to his course of treatment, we note that he admitted that medication made his pain tolerable (AR 175).  He admittedly was able to walk one block, stand for approximately 10 to 15 minutes, sit for approximately 15 to 20 minutes before needing to change positions, and could lift from waist level but not from the floor (AR 175-176).  Further, as found by the ALJ, Robison's claims of debilitating symptoms are inconsistent with his daily activities, and we observe that during his most recent office visit with Dr. Kalata, he complained of increased pain after he fell while putting plastic over windows (AR 145).  In any event, the

15

ALJ accommodated Robison's claimed limitations relative to his ability to sit, stand and/or walk by limiting him to sedentary work with a sit/stand option.  We therefore find that there was substantial evidence in the record, taken as a whole, to support the ALJ's credibility determination.

### IV. CONCLUSION

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK ROBISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-141 Erie |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

AND NOW, this 11th day of December, 2006, and for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 5] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 6] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Mark Robison.

The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.

17